## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PAPST LICENSING GMBH & CO. KG,  )
                              )
        Plaintiff,           )
                              )
     v.                   )       Civil Action No. 14-1375-LPS-CJB
                              )
LATTICE SEMICONDUCTOR CORP.,  )
                              )
        Defendant.        )

------------------------------------------------

PAPST LICENSING GMBH & CO. KG,  )
                              )
        Plaintiff,           )
                              )
     v.                   )       Civil Action No. 14-1376-LPS-CJB
                              )
XILINX, INC.,                )
                              )
        Defendant.        )

------------------------------------------------

PAPST LICENSING GMBH & CO. KG,  )
                              )
        Plaintiff,           )
                              )
     v.                   )       Civil Action No. 15-162-LPS-CJB
                              )
ALTERA CORPORATION,       )
                              )
        Defendant.        )

------------------------------------------------

## <u>MEMORANDUM ORDER</u>

Plaintiff Papst Licensing GmbH & Co. KG ("Papst" or "Plaintiff") filed the instant three actions for patent infringement against Defendants Lattice Semiconductor, Corp. ("Lattice"), Xilinx, Inc. ("Xilinx") and Altera Corporation ("Altera") (collectively, "Defendants"). Presently pending before the Court are Defendants' motions to transfer venue to the Northern District of California ("Motions" or "motions to transfer"). For the reasons that follow, Defendants'

Motions are GRANTED.

## I. BACKGROUND

### A. The Parties

Plaintiff Papst is a German corporation with its principal place of business in St. Georgen, Germany. (D.I. 1 at ¶ 1, Civil Action No. 14-1375-LPS-CJB)[1] According to Plaintiff, Papst is "a patent licensing company protecting its own and others' intellectual property rights." (*Id.* at ¶ 6)

Defendants are all companies active in the programmable logic devices industry and are all incorporated in Delaware. (D.I. 1 at ¶ 2; D.I. 18 at ¶ 3; D.I. 14 at 3, D.I. 16 at ¶ 6, Civil Action No. 14-1376-LPS-CJB; D.I. 13 at ¶ 2, D.I. 14, ex. 1 at ¶ 1, Civil Action No. 15-162-LPS-CJB) None of the Defendants have any offices or employees within Delaware. (D.I. 18 at ¶ 4; D.I. 16 at ¶ 6, Civil Action No. 14-1376-LPS-CJB; D.I. 13 at ¶ 11, Civil Action No. 15-162-LPS-CJB) Lattice is headquartered in Oregon, and has its primary research and development facility located in San Jose, California, in the Northern District of California. (D.I. 18 at ¶ 3) Xilinx and Altera are both headquartered and have their principal places of business in San Jose, California. (D.I. 16 at ¶ 2, Civil Action No. 14-1376-LPS-CJB; D.I. 13 at ¶ 2, Civil Action No. 15-162-LPS-CJB)

### B. Procedural Background

The instant cases are three of a group of five related cases that were filed in late 2014. Three of those five cases—the instant three cases—were filed in this District ("the Delaware

---

[1]     Citations herein are to the docket in Civil Action No. 14-1375-LPS-CJB unless otherwise noted.

Actions"); the other two were filed in the Northern District of California (together, "the California Actions").

The first of the five related cases to be filed was a declaratory judgment action, which Altera filed against Papst on October 28, 2014 in the Northern District of California (the "*Altera* California Action"). (*Altera Corp. v. Papst Licensing GmbH & Co. KG* ("*Altera Corp.*"), D.I. 1, Civil Action No. 14-04794-LHK (N.D. Cal.)) Papst then filed the two infringement actions in this District against Lattice and Xilinx, respectively, on November 7, 2014. (D.I. 1; D.I. 1, Civil Action No. 14-1376-LPS-CJB) Next, within hours of Papst filing its action against Xilinx, Xilinx filed a declaratory judgment action against Papst in the Northern District of California (the "*Xilinx* California Action"). (*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG* ("*Xilinx*"), D.I. 1, Civil Action No. 14-04963-LHK) Finally, Papst brought an infringement suit against Altera in this District months later, on February 17, 2015. (D.I. 1, Civil Action No. 15-162-LPS-CJB)

The California Actions both sought declaratory judgments of noninfringement and invalidity as to United States Patent Nos. 6,574,759 and 6,704,891. (*Xilinx*, D.I. 1 at ¶ 1; *Altera Corp.*, D.I. 1 at ¶ 4) Papst is the current owner and assignee of the patents-in-suit, having ultimately acquired them from Rambus, Inc. ("Rambus"), (D.I. 1 at ¶ 7), apparently in 2012, (D.I. 19, exs. D-E). The patents-in-suit are "generally directed towards methods for generating and verifying tests for memory." (D.I. 1 at ¶ 8)

The Delaware Actions all concern these same two patents (hereinafter, the "patents-in-suit"). Papst alleges that Defendants have directly infringed the patent-in-suits in Delaware and elsewhere by "making, having made, using, offering for sale, and/or selling the claimed methods

3

for generating and verifying a test of memory." (*See, e.g.*, D.I. 1 at ¶¶ 13, 19) It alleges that Defendants have indirectly infringed the patents as well, through the provision of their design software, the sale of their Field Programmable Gate Array (or "FGPA") semiconductor devices and related equipment, and their provision of instruction to their customers. (*See, e.g.*, *id.* at ¶¶ 15, 21)

All of the Delaware Actions are assigned to Chief Judge Leonard P. Stark; all have been referred to the Court by Chief Judge Stark for all matters relating to scheduling and for resolution of any motions to dismiss, stay, and/or transfer venue. (*See, e.g.*, D.I. 5) Lattice, Xilinx and Altera filed their motions to transfer on March 2, 2015, February 2, 2015 and March 31, 2015, respectively. (D.I. 16; D.I. 13, Civil Action No. 14-1376-LPS-CJB; D.I. 11, Civil Action No. 15-162-LPS-CJB) Altera's motion to transfer was a bit different than those of the other two Defendants; it was styled as a motion to dismiss the case against it in light of the "first-filed" *Altera* California Action, or, in the alternative, as a motion to stay or transfer. (D.I. 11, Civil Action No. 15-162-LPS-CJB)

Briefing on all of the motions to transfer was completed by April 27, 2015. (D.I. 18, Civil Action No. 15-162-LPS-CJB) The Court subsequently held a Case Management Conference on June 1, 2015, and issued a Scheduling Order on June 8, 2015. (*See, e.g.*, D.I. 32)

## II.    DISCUSSION

### A.    Legal Standard

#### 1.    Motion to Transfer Venue

Section 1404(a) of Title 28 provides the statutory basis for a transfer inquiry. It provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

The party seeking a transfer has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer[.]" *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citation omitted); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).[2] That burden is a heavy one: "unless the balance of convenience of the parties is *strongly in favor of defendant*, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks and citation omitted) (emphasis added); *see also CNH Am. LLC v. Kinzenbaw*, C.A. No. 08-945(GMS), 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009).

The Third Circuit has observed that courts must analyze "all relevant factors" to determine whether "the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (internal quotation marks and citation omitted). Nevertheless, it has identified a set of private interest and public interest factors that are appropriate to account for in this analysis (the "*Jumara* factors"). The private interest factors to consider include:

> [1] [The] plaintiff's forum preference as manifested in the original choice, [2] the defendant's preference, [3] whether the claim arose elsewhere, [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora . . . and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)[.]

---

[2]     In analyzing a motion to transfer venue in a patent case, it is the law of the regional circuit that applies. *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 487 n.7 (D. Del. 2011) (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011)).

*Id.* (citations omitted). The public interest factors to consider include:

> [1] [T]he enforceability of the judgment, [2] practical considerations that could make the trial easy, expeditious, or inexpensive, [3] the relative administrative difficulty in the two fora resulting from court congestion, [4] the local interest in deciding local controversies at home, [5] the public policies of the fora, . . . and [6] the familiarity of the trial judge with the applicable state law in diversity cases[.]

*Id.* at 879-80 (citations omitted).

### 2. The "First-filed" Rule

As noted above, Altera's motion to transfer invoked the "first-filed" rule—a rule set out by the Federal Circuit in patent cases, wherein the "forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *rev'd on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). Subsequent to the filing of Altera's motion, on July 9, 2015, the *Altera* California Action and the *Xilinx* California Action were both dismissed for lack of personal jurisdiction over Papst (the defendant in each of the two actions). (D.I. 31 & ex. A, Civil Action No. 15-162-LPS-CJB) As Altera's asserted "first-filed" case no longer exists, and because Altera does not suggest that it would now otherwise make sense to do so, (D.I. 31, D.I. 33, Civil Action No. 15-162-LPS-CJB), the Court will not further address "first-filed" case law in resolving Altera's Motion. Instead, it will treat Altera's Motion as a motion to transfer venue pursuant to Section 1404(a). (D.I. 12 at 8, Civil Action No. 15-162-LPS-CJB)

### C. Appropriateness of Transferee Venue

The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee venue. *Mallinckrodt Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009). In the parties' briefing, there was no dispute that these infringement actions could have been properly brought in the Northern District of California. *See* 28 U.S.C. § 1400(b).

### D. Application of the *Jumara* Factors

The Court will proceed to analyze the *Jumara* factors and their impact on whether transfer should be granted for all Defendants.

#### 1. Private Interest Factors

##### a. Plaintiff's choice of forum

When analyzing the first *Jumara* private interest factor—the "plaintiff's forum preference as manifested in the original choice"—the court should not consider simply the fact of that choice, but the reasons behind the choice. *Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2012 WL 4889438, at *4 & n.5 (D. Del. Oct. 15, 2012) ("*Pragmatus I*") (citing cases), *adopted by* 2013 WL 174499 (D. Del. Jan. 16, 2013); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 200 (D. Del. 1998). "If those reasons are rational and legitimate[,] then they will weigh against transfer, as they are likely to support a determination that the instant case is properly venued in this jurisdiction." *Pragmatus I*, 2012 WL 4889438, at *4 (internal quotation marks and citations omitted); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 753-54 (D. Del. 2012) ("*Altera*"). On the other hand, where a plaintiff's choice of forum was made for an improper reason—such as where the choice is arbitrary, irrational, or selected to impede the efficient and convenient progress of a case—it should not be afforded

7

substantial weight. *Pragmatus I*, 2012 WL 4889438, at \*4; *Affymetrix*, 28 F. Supp. 2d at 200

(noting that if a plaintiff had no good reason, or an improper reason, for filing suit in this District,

this would likely weigh in favor of transfer).[3]

Plaintiff states that it brought the actions in this District because, *inter alia*, all three

Defendants are incorporated in Delaware. (*See, e.g.*, D.I. 20 at 7) Our Court has repeatedly

found that it is plainly rational and legitimate for a plaintiff to choose to sue a defendant in that

defendant's state of incorporation—a district where a plaintiff can have some certainty that there

will be personal jurisdiction over the defendant. *See, e.g.*, *TSMC Tech., Inc. v. Zond, LLC*, Civil

Action No. 14-721-LPS-CJB, 2014 WL 7251188, at \*15 (D. Del. Dec. 19, 2014) (citing cases),

---

[3]     Defendants' briefs focus heavily on the fact that Delaware is not Plaintiff's "home turf" (in light of the fact that Plaintiff is incorporated in Germany and has its principal place of business in Germany), and how this should affect the weight afforded to the first *Jumara* private interest factor. (*See* D.I. 17 at 8; D.I. 14 at 10-11, Civil Action No. 14-1376-LPS-CJB; D.I. 12 at 12, Civil Action No. 15-162-LPS-CJB) However, the Court has previously concluded—after reviewing this Court's prior case law discussing this "home turf" issue—that whether Delaware is a plaintiff's "home turf," *in and of itself*, has no independent significance regarding the standard used in the overall *Jumara* balance of convenience analysis, nor to the analysis as to this first *Jumara* private interest factor. *See McRo, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 12-1508-LPS-CJB, 2013 WL 6571618, at \*3 n.8 (D. Del. Dec. 13, 2013) (citing cases), *adopted by* 2013 WL 6869866 (D. Del. Dec. 30, 2013). Whether Delaware is Plaintiff's home turf or not, Defendants must still demonstrate that the balance of convenience tips strongly in favor of transfer. *Id.* And as the Court noted above, the appropriate focus as to this first *Jumara* private interest factor is on the strength and legitimacy of Plaintiff's reasons for filing suit in this District. *Cf. In re Amendt*, 169 Fed. App'x. 93, 96 (3d Cir. 2006) (citing *Jumara* and, in examining the first two private interest factors, considering the reasoning behind the parties' choices to litigate in the respective fora, and concluding that because elements of the claims "arose in [plaintiffs' preferred forum and defendant's preferred forum,]" then the weight given to these two factors effectively cancelled each other out); *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. May 3, 2012) (finding that where the foreign corporation plaintiff filed suit in Delaware for legitimate reasons, including the fact that the defendant was a Delaware corporation, the factor weighed against transfer). Of course, if a plaintiff like Papst has no ties to Delaware and is based overseas, those facts will certainly be relevant in the analysis of other *Jumara* factors, as is further discussed below.

*adopted by* 2015 WL 328334 (D. Del. Jan. 26, 2015); *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 373 (D. Del. 2012); *Altera*, 842 F. Supp. 2d at 754. The case for bringing suit here is even more clear when multiple related suits are to be instituted at the same time in a common forum—against defendants that are all Delaware corporations. (*See, e.g.*, D.I. 20 at 7-8); *see also Genetic Techs. Ltd. v. Natera, Inc.*, C.A. No. 12-1737-LPS, 2014 WL 1466471, at *1 (D. Del. Apr. 15, 2014) ("*Natera, Inc.*").

Therefore, because there are clear, legitimate reasons why Plaintiff chose this forum for suit, this factor weighs against transfer.

### b. Defendant's forum preference

As for the second private interest factor—the defendant's forum preference—Defendants prefer to litigate in the Northern District of California. In analyzing this factor, the Court has similarly "tended to examine whether the defendant can articulate rational, legitimate reasons to support that preference." *Pragmatus I*, 2012 WL 4889438, at *6 (citation omitted).

Defendants argue throughout their briefing that they have a number of legitimate reasons for seeking to transfer this action to the Northern District of California, including: (1) Defendants are headquartered and/or have significant places of business located in that forum; (2) most of the party and non-party witnesses are located in that forum; (3) many of the relevant documents are located there; and (4) all accused software and related products were designed and developed in that forum. (D.I. 17 at 8; D.I. 14 at 11-12, Civil Action No. 14-1376-LPS-CJB; D.I. 12 at 11, 13, Civil Action No. 15-162-LPS-CJB) As this Court has often held, the physical proximity of the proposed transferee district to a defendant's principal or key place of business (and relatedly, to witnesses and evidence potentially at issue in the case) is a clear, legitimate

9

basis for seeking transfer. *See, e.g., Nalco Co. v. AP Tech Grp. Inc.*, C.A. No. 13-1063-LPS, 2014 WL 3909114, at *1 (D. Del. Aug. 8, 2014); *Natera, Inc.*, 2014 WL 1466471, at *1.

Thus, the second private interest *Jumara* factor weighs in favor of transfer.

### c.    Whether the claim arose elsewhere

The third private interest *Jumara* factor asks "whether the claim arose elsewhere." As a matter of law, a claim regarding patent infringement arises "wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *McRo, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 12-1508-LPS-CJB, 2013 WL 6571618, at *5 (D. Del. Dec. 13, 2013) (internal quotation marks and citations omitted), *adopted by* 2013 WL 6869866 (D. Del. Dec. 30, 2013). Nevertheless, as to this factor, this Court typically focuses on the location of the production, design and manufacture of the accused instrumentalities. *Id.* (citing cases); *Altera*, 842 F. Supp. 2d at 755 ("'[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.'") (quoting *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

In this case, Defendants are accused of "making, having made, using, offering for sale, and/or selling the claimed methods for generating and verifying a test of memory." (*See, e.g.*, D.I. 1 at ¶¶ 13, 19) It is undisputed that the direct infringement of these method claims[4] occurred where the method was performed—in the Northern District of California, where Defendants develop and use their GPA logic design technology. (D.I. 17 at 9; D.I. 18 at ¶ 3; D.I. 20 at 11; D.I. 14 at 12, D.I. 16 at ¶ 4, D.I. 18 at 9, Civil Action No. 14-1376-LPS-CJB; D.I. 12 at 13-14,

---

[4]      All of the claims of the patents-in-suit are method claims. (D.I. 19, exs. G-H)

D.I. 13 at ¶ 2, D.I. 16 at 12-13, Civil Action No. 15-162-LPS-CJB); *see also Ricoh Co., Ltd. v. Quanta Comp. Inc.*, 550 F. 3d 1325, 1335 (Fed. Cir. 2008). Defendants are also accused of indirectly infringing the patents-in-suit by directing and aiding their customers in using the infringing method, through various means. (*See, e.g.*, D.I. 1 at ¶¶ 15, 21) There the direct infringement would arise where the customer was located, while the acts of inducement would emanate from the Northern District of California. (D.I. 17 at 9; D.I. 18 at ¶ 3; D.I. 20 at 11; D.I. 24 at 4; D.I. 14 at 12, D.I. 16 at ¶ 4, D.I. 18 at 9, Civil Action No. 14-1376-LPS-CJB; D.I. 12 at 13-14, D.I. 13 at ¶ 2, D.I. 16 at 12-13, Civil Action No. 15-162-LPS-CJB)

Although some accused products may be used to perform the patented methods in Delaware (after sale here), it is clear that the allegedly infringing acts at issue have a far stronger connection to the Northern District of California than they do with Delaware (or any other district). In such a circumstance, the Court finds that this factor weighs in favor of transfer. *Cf. Nalco Co.*, 2014 WL 3909114, at \*2 (finding that this factor "favor[ed] transfer" where the defendant "conduct[ed] all of its research and development, marketing, and sales out of" the proposed transferee forum such that plaintiff's claims arose "from products developed, marketed, and sold out of" that forum); *Altera*, 842 F. Supp. 2d at 755 (finding this factor weighed in favor of transfer where, *inter alia*, some research and development of allegedly infringing products had occurred in the proposed transferee district and none in Delaware, although the allegedly infringing products were sold nationwide).

### d.     Convenience of the parties as indicated by their relative physical and financial condition

In assessing the next private interest factor—"the convenience of the parties as indicated

11

by their relative physical and financial condition"—this Court has traditionally examined a number of issues. These issues include: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, C.A. No. 12-CV-139 (GMS), 2013 WL 3293611, at *4 (D. Del. June 28, 2013) (internal quotation marks and citations omitted); *McGee v. PetSmart, Inc.*, C.A. No. 12-1117-SLR-MPT, 2013 WL 1163770, at *4 (D. Del. Mar. 20, 2013) (citations omitted).

Defendants state that because their facilities, employee witnesses and records are located in the transferee district, litigating there would be more convenient for them. (D.I. 17 at 10; D.I. 14 at 14-15, Civil Action No. 14-1376-LPS-CJB; D.I. 12 at 15, Civil Action No. 15-162-LPS-CJB) The Court agrees that it would.

Yet a number of factors suggest that the magnitude of any net gain in convenience for Defendants (due to litigating in California as compared to this District) is not large. For example, one aspect of a company's decision to incorporate in Delaware is an agreement to submit itself to the jurisdiction of this State's courts in order to resolve legal disputes. *Altera*, 842 F. Supp. 2d at 756. In light of that, it would seem incongruous were the Court to conclude that Delaware is a decidedly inconvenient location for Defendants (all Delaware corporations) to defend a lawsuit. *Id.* (citing *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011)). Moreover, while Defendants' employee witnesses would face some additional inconvenience were they obligated to travel to Delaware for pre-trial or trial proceedings, the amount of such travel is not likely to be large—particularly if this case does not result in a trial.

12

*See, e.g., Human Genome Scis., Inc. v. Genentech, Inc.*, C.A. No. 11-082-LPS, 2011 WL 2911797, at *7 (D. Del. July 18, 2011) (noting that the likelihood that few case events would occur in Delaware—particularly few if the case did not go to trial—weighed against transfer, as did technological advances that allow traveling employees to more easily interact with their office while away). Lastly, Defendants are all large, global corporations that employ hundreds or thousands of people and generate hundreds of millions of dollars in annual sales. (*See, e.g.*, D.I. 21, exs. F-G); *see also Altera*, 842 F. Supp. 2d at 755. In light of this, it is unsurprising that nothing in the record suggests that litigating in Delaware would impose any meaningful financial or logistical burden on Defendants.

As for Plaintiff, it notes that a plane trip for its employees from Germany to Delaware is shorter (by a few hours) than a trip from Germany to California. (*See, e.g.*, D.I. 19, exs. I-J; D.I. 20 at 13 n.9)[5] But with little in the record as to Plaintiff's financial or operational status, the Court cannot conclude that any travel-time disparity would be material to Plaintiff. Plus, it is hard to view California as meaningfully inconvenient for Plaintiff, when Plaintiff touts itself as an international entity that is "[a]ctive worldwide[,]" (*see, e.g.*, D.I. 15, ex. I, Civil Action No. 14-1376-LPS-CJB), and previously filed a number of patent litigation matters in the Northern District of California or in an adjacent district, (*see, e.g., id.*, exs. T-X, Civil Action No. 14-1376-LPS-CJB).

---

[5]     Defendant Xilinx disputes even this, putting forward some evidence that, depending on the flight and the airline, the cost and time of such travel may be about the same to either location. (D.I. 15, exs. Z-AA, Civil Action No. 14-1376-LPS-CJB) In any event, it is true that Plaintiff, unlike Defendants, "will be traveling a great distance no matter which venue the case is tried in and will be only slightly more inconvenienced [in terms of cost and travel time] by the case being tried in California rather than in" Delaware. *In re Genentech Inc.*, 566 F. 3d 1338, 1345 (Fed. Cir. 2009).

In light of all of the above, little of which moves the needle either way, the Court finds

that the factor should be neutral. *See Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d

718, 730 (D. Del. 2012) (finding the factor to be neutral, where the defendant was located in the

transferee district but had significant financial resources to bear any inconvenience, and where

the plaintiff was not a Delaware corporation and was physically located in Texas, such that

Delaware was not "much more convenient" than the transferee district); *cf. Altera*, 842 F. Supp.

2d at 755-56 (finding that this factor only slightly favored transfer to the Northern District of

California, in a case involving these three Defendants, where the plaintiff, a Delaware

corporation, had an office in the transferee district and was headquartered in nearby Washington

State).

### e. Convenience of the witnesses to the extent that they may actually be unavailable for trial in one of the fora

The "convenience of the witnesses" is the next factor, "but only to the extent that the

witnesses may actually be unavailable for trial in one of the fora[.]" *Jumara*, 55 F.3d at 879. Of

particular concern here are fact witnesses who may not appear of their own volition in the venue-

at-issue and who could not be compelled to appear by subpoena pursuant to Federal Rule of Civil

Procedure 45. *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 569 (D. Del. 2001);

*Affymetrix,* 28 F. Supp. 2d at 203-05.

In *Jumara*, the Third Circuit made clear that in order for this factor to meaningfully favor

the movant, the movant must come forward with some amount of specificity. This is evident

from the wording of the factor itself, which notes that a witnesses' convenience should be

considered "only to the extent that the witnesses may *actually be* unavailable for trial in one of

14

the fora[.]" *Jumara*, 55 F.3d at 879 (emphasis added). It is also evident from the legal authority

that *Jumara* cited to in setting out this factor, which explains:

> The rule is that these applications [for transfer] are not determined
> solely upon the outcome of a contest between the parties as to which
> of them can present a longer list of possible witnesses located in the
> respective districts in which each party would like to try the case.
> The party seeking the transfer must clearly specify the key witnesses
> to be called and must make a general statement of what their
> testimony will cover. The emphasis must be on this showing rather
> than numbers. One key witness may outweigh a great number of
> less important witnesses. If a party has merely made a general
> allegation that witnesses will be necessary, without identifying them
> and indicating what their testimony will be the application for
> transfer will be denied.

15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure:*

*Jurisdiction and Related Matters* § 3851, at 425-28 (2d ed. 1986) (footnotes omitted) (cited in

*Jumara*, 55 F.3d at 879). In light of this, in order for the movant to convincingly argue that this

factor squarely favors transfer, the Court believes that the movant must provide specificity as to:

(1) the particular witness to whom the movant is referring; (2) what that person's testimony

might have to do with a trial in this case; and (3) what reason there is to think that the person will

"actually" be unavailable for trial (as opposed to the proffer of a guess or speculation on that

front).

Defendants here do identify a number of non-party individuals or entities, located in the

proposed transferee forum, who are asserted to be relevant to a trial: (1) the prior patentee,

Rambus; (2) the three inventors of the patents-in-suit, who are prior or current Rambus

employees; and (3) the prosecuting attorneys of the patents-in-suit. (D.I. 17 at 11; D.I. 19, exs. F-

K; D.I. 14 at 14, D.I. 15, exs. J-M, Civil Action No. 14-1376-LPS-CJB; D.I. 12 at 16, Civil

Action No. 15-162-LPS-CJB)[6] And they at least make some attempts to set out the evidence these witnesses may possess that would be relevant to trial. (D.I. 14 at 14, Civil Action No. 14-1376-LPS-CJB; D.I. 12 at 16, Civil Action No. 15-162-LPS-CJB)[7] Yet Defendants provide no evidence demonstrating or suggesting that any of these potential witnesses will "actually be" unavailable for trial in Delaware.[8] Plaintiff, for its part, identifies no potential third-party witnesses closer to Delaware than to the Northern District of California.

---

[6]     Defendants also assert that their own employee witnesses are located in the transferee district, and that this fact also weighs in favor of transfer. (D.I. 17 at 11; D.I. 14 at 14, Civil Action No. 14-1376-LPS-CJB; D.I. 12 at 16, Civil Action No. 15-162-LPS-CJB) However, "witnesses who are employed by a party carry no weight in [the analysis as to this factor] since each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix,* 28 F. Supp. 2d at 203. In any event, these employee witnesses are already taken into account in an analysis of the "convenience of the parties" private interest *Jumara* factor.

[7]     The need to describe such evidence in detail may be a bit less crucial as to the inventors, as it is an easier inference that some amount of inventor testimony could be important at trial. *See, e.g., Pragmatus I,* 2012 WL 4889438, at *10; *see also OpenTV, Inc. v. Netflix, Inc.,* Civil Action No. 12-1733 (GMS), 2014 WL 1292790, at *3 (D. Del. Mar. 31, 2014).

[8]     Defendant Xilinx complains that it would be "virtually impossible" for a Defendant to make such a showing early in the case. (D.I. 22 at 6) That is not so. Many defendants have made just such a showing in this District (that is, have provided affidavits, declarations, or some other type of reliable record evidence indicating that third party witnesses would actually be unwilling or unlikely to testify at trial in Delaware). *See, e.g., Elm 3DS Innovations LLC v. SK Hynix Inc.,* Civil Action No. 14-1432-LPS-CJB, 2015 WL 4967139, at *9 (D. Del. Aug. 20, 2015); *Good Tech. Corp. v. MobileIron, Inc.,* Civil Action No. 14-1308-LPS-CJB, 2015 WL 1458091, at *6 (D. Del. Mar. 27, 2015); *Wireless Media Innovations, LLC v. LeapFrog Enterprises, Inc.,* C.A. No. 13-1545-SLR-SRF, 2014 WL 1203035, at *4 (D. Del. Mar. 20, 2014); *Linex Techs., Inc. v. Hewlett-Packard Co.,* Civil Action No. 11-400-GMS, 2013 WL 105323, at *5 (D. Del. Jan. 7, 2013); *Alcoa Inc. v. Alcan Inc.,* Civ. No. 06-451-SLR, 2007 WL 1948821, at *4 (D. Del. July 2, 2007); *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.,* 77 F. Supp. 2d 505, 510-11 (D. Del. 1999); *Affymetrix,* 28 F. Supp. 2d at 203-04; *cf. Textron Innovations, Inc. v. The Toro Co.,* No. Civ.A. 05-486 GMS, 2005 WL 2620196, at *2 (D. Del. Oct. 14, 2005) (finding that this factor did not favor transfer after two third-party inventor witnesses from outside of the District of Delaware "stated, in sworn declarations, that they are willing to appear in Delaware for depositions and trial").

Absent some concrete evidentiary showing that third party witnesses (like the inventors) will be unlikely to testify, the Court cannot give Defendants' argument as to their potential unavailability great weight. *See Pragmatus I*, 2012 WL 4889438, at \*10 & n.9 (citing cases).[9] But with some number of possible third-party trial witnesses located in the transferee district and none in Delaware, the Court finds that this factor should at least weigh slightly in favor of Defendants. *See Pragmatus I*, 2012 WL 4889438, at \*10-11; *see Graphics Properties Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 329 (D. Del. 2013) (holding that this factor "favors transfer, but only slightly" where all named inventors were located in the transferee district, but the movant produced no evidence that they would refuse to appear in Delaware); *cf. Round Rock Research LLC v. ASUSTeK Computer Inc.*, 967 F. Supp. 2d 969, 980 (D. Del. 2013) (finding that this factor "at most marginally favors transfer" where twelve inventors of the asserted patents were located near to the transferee district).

### f. Location of books and records

Next the Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotation marks and citation omitted). Yet this factor is commonly given little weight, as

---

[9] The Court also notes that even were these witnesses unlikely to testify in Delaware, the practical impact of this factor would still be limited, in light of the fact that so few civil cases today proceed to trial (and at trial, so few fact witnesses testify live). *Cellectis*, 2012 WL 1556489, at \*6 & n.6; *Altera*, 842 F. Supp. 2d at 757-58.

technological advances have "shortened the time it takes to transfer information, reduced the

bulk or size of documents or things on which information is recorded . . . and have lowered the

cost of moving that information from one place to another." *Cypress Semiconductor Corp. v.

Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at \*3 (D. Del. Nov. 28, 2001)

(internal quotation marks and citation omitted); *see also Cellectis S.A. v. Precision Biosciences,

Inc.*, 858 F. Supp. 2d 376, 382 (D. Del. May 3, 2012); *ADE Corp.*, 138 F. Supp. 2d at 571.

It is undisputed that the majority of relevant documentation regarding the claims and

defenses in this case will be located in or near the Northern District of California, and not in

Delaware. (*See* D.I. 17 at 12; D.I. 20 at 16; D.I. 14 at 14, D.I. 18 at 12-13, Civil Action No. 14-

1376-LPS-CJB; D.I. 12 at 17, D.I. 16 at 17, Civil Action No. 15-162-LPS-CJB) Defendants,

however, do not attempt to show that any of these books and records could not be easily

produced electronically in Delaware for trial. In such circumstances, this factor only slightly

favors transfer. *See, e.g., Altera*, 842 F. Supp. 2d at 759; *Intellectual Ventures I LLC v.

Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 485 (D. Del. 2011) ("*Checkpoint

Software*").

### 2. Public Interest Factors

The Court below addresses the three public interest factors that were asserted by the

parties to be anything other than neutral.

#### a. Practical considerations that could make the trial easy, expeditious, or inexpensive

The Court next considers the "practical considerations that could make the trial easy,

expeditious, or inexpensive." *Jumara*, 55 F.3d at 879.

In their briefing, the "practical consideration[]" that the parties spent the most time addressing was the existence of the then-co-pending and related California Actions and Delaware Actions. *See Ross v. Institutional Longevity Assets LLC*, Civil Action No. 12-102-LPS-CJB, 2013 WL 5299171, at *13 (D. Del. Sept. 20, 2013) ("In examining this *Jumara* factor, our Court has often cited the existence of related lawsuits in one of the fora at issue as being an important practical consideration to be taken into account.") (internal quotation marks and citation omitted). As for the California Actions, they have now been dismissed, and so it would not make any sense to consider their impact in resolving this Motion.[10]

With regard to the fact that there are three Delaware Actions, the Court certainly agrees with Plaintiff that maintaining these cases together in one court would "best serve[] the interests of judicial economy." (D.I. 20 at 17). But here, all three Defendants have filed Motions seeking transfer to the Northern District of California, and the evidence relating to each of those Motions is similar, warranting the same outcome. Thus, either all three cases will remain here in this District, or they will all be transferred to the Northern District of California. Either way, judicial economy will be served.

Defendant Altera does note that were the cases litigated in the transferee forum, it would

---

[10]    Plaintiff suggests that the fact that the Northern District of California lacks personal jurisdiction over it is a practical consideration that weighs against transfer here. (D.I. 32, D.I. 34, Civil Action No. 15-62-LPS-CJB) Yet, as Defendants note, (D.I. 33, Civil Action No. 15-62-LPS-CJB), "[t]here is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint." *In re Genentech, Inc.*, 566 F. 3d 1338, 1346 (Fed. Cir. 2009) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)); *see also Human Genome Sci.*, 2011 WL 2911797, at *3. Thus, the fact that the transferee court lacks personal jurisdiction over the Plaintiff has no effect on the transfer analysis.

19

eliminate the cost associated with local counsel in Delaware. (D.I. 12 at 17, Civil Action No. 15-162-LPS-CJB) Our Court has acknowledged this added cost as a practical consideration that could make litigation here more expensive than in a transferee court like the Northern District of California. *See IpVenture, Inc. v. Acer, Inc.*, 879 F. Supp. 2d 426, 433 (D. Del. 2012); *Affymetrix*, 28 F. Supp. 2d at 205-06. Under the circumstances, the Court finds that this added cost should render this factor in favor of transfer, but only slightly. *Checkpoint Software*, 797 F. Supp. 2d at 485 (finding this factor to slightly favor transfer, where the cost of local counsel in Delaware was the only consideration raised by the parties, and where the parties seemed financially capable of bearing the added expense).

### b.    Administrative difficulties in getting the case to trial

The next factor is the "relative administrative difficulty in the two fora resulting from court congestion[.]" *Jumara*, 55 F.3d at 879.

Defendants assert that this factor favors transfer. In doing so, they cite statistics that show, for example, that: (1) in 2014, Delaware had 946 patent cases filed, whereas the Northern District of California had 257 patent cases filed; (2) in 2014, Chief Judge Stark had 408 open patent cases, while no District Judge in the Northern District of California had more than 35 such open cases; and (3) the number of weighted filings per District Judge in this District was almost two and a half times that in the transferee district. (*See, e.g.*, D.I. 17 at 14; D.I. 19, exs. M-Q; D.I. 14 at 16, D.I. 15, exs. P-Q, Civil Action No. 14-1376-LPS-CJB) But as Plaintiff notes, for the one year period ending September 30, 2014, the median time from filing to disposition and from filing to trial for a civil action differed between the Northern District of California and this District by only 1.7 months and 0.9 months, respectively. (D.I. 20 at 19; D.I. 21, ex H) These

statistics demonstrate that while there may be more patent cases litigated in this District, as opposed to the transferee district, in practice the cases proceed forward at roughly the same rate. The Court thus finds this factor to be neutral.[11]

### c. Local interests in deciding local controversies at home

In patent litigation, the local interest factor is typically neutral, as patent issues tend to raise controversies that are more properly viewed as national, not local, in scope. *Graphics Props. Holdings*, 964 F. Supp. 2d at 330. Nevertheless, "[w]hile the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue . . . if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann–La Roche*, 587 F.3d at 1338 (citations omitted); *see also Graphics Props.*, 964 F. Supp. 2d at 330-31.

Defendants suggest that the Northern District of California has a stronger connection to the case because a large number of witnesses and relevant records and information are found there. (*See, e.g.*, D.I. 17 at 15; D.I. 12 at 19, Civil Action No. 15-162-LPS-CJB) Because there are some number of persons (e.g., Defendants' employees and third-party witnesses) located in the transferee district with a connection to this case, and none in Delaware, it can be said that the Northern District of California has some greater local interest in the case than does Delaware.

---

[11]    *See, e.g.*, *Good Tech. Corp.*, 2015 WL 1458091 at *9 (finding this factor to be neutral where, *inter alia*, the median time to trial was between three to five months faster in the proposed transferee district than in this District during the relevant time periods); *Pragmatus I*, 2012 WL 4889438, at *13 (concluding the same, in part due to the fact that the transferee district's average time to trial was only 0.85 months less than this District, and the average time to disposition was 3.1 months less); *Checkpoint Software*, 797 F. Supp. 2d at 486 (concluding the same, where the difference in time to trial favored the transferee district by 3.7 months, an "'inconsequential'" amount) (internal citation omitted).

21

Defendants have not, however, shown that this case has outsized resonance to the citizens of the transferee district, or that its outcome would significantly impact that district. *Cf. Andrews Int'l, Inc. v. Indian Harbor Ins. Co.*, C.A. No. 12-775-LPS, 2013 WL 5461876, at *4 (D. Del. Sept. 30, 2013) (holding that this factor "strongly" favored transfer where the case involved consideration of the enforceability under California law of certain insurance coverage provisions, which was "an issue of first impression" in that state, where the transferee district was located); *Downing v. Globe Direct LLC*, Civil Action No. 09-693 (JAP), 2010 WL 2560054, at *4 (D. Del. June 18, 2010) (finding that this factor favored transfer where the case "concern[ed] . . . the conduct of [a] Massachusetts government agency, and therefore the case [had] the potential to impact the public policy of as well as, to some extent, the taxpayers of Massachusetts [the transferee forum]").[12]

Under these circumstances, the Court finds this factor to slightly favor transfer. *Cf. Altera*, 842 F. Supp. 2d at 760 (finding this factor to be neutral, where the transferee forum had "an interest in this litigation, given the presence of all of the parties in that District, either through maintenance of offices or other facilities and sales of the accused products there[,]" but where that interest was counterbalanced by Delaware's interest in adjudicating disputes arising between its corporate citizens, including the plaintiff).

---

[12] In listing this public interest factor as relevant in *Jumara*, the Third Circuit cited to 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 0.345[5], at 4374 (2d. ed. 1995). *See Jumara*, 55 F.3d at 880. That portion of *Moore's Federal Practice* cites only to a single case, *McCrystal v. Barnwell Cnty., S.C.*, 422 F. Supp. 219, 224 (S.D.N.Y. 1976). That case very clearly implicated local interests in the transferee forum not only because the "great majority of acts complained of took place in South Carolina[,]" but, importantly, also because the case involved "public bonds issued pursuant to a state statute in which the governmental body which issued the bonds, Barnwell County, is named as a defendant," such that the case "directly involved units of South Carolina's government." *Id.* at 224. The Court held that "[i]ssues of South Carolina law and inquiries into the workings of South Carolina government are better left to South Carolina District Judges." *Id.* at 225.

### 3.    Conclusion Regarding Impact of *Jumara* Factors

In sum, Defendants' forum preference and where the claims arose squarely favor transfer, while the convenience of the witnesses, the location of books and records, the "practical considerations" factor and the "local interests" factor all slightly favor transfer. The only factor that weighs against transfer (and squarely so) is Plaintiff's choice of forum.

Ultimately, after careful consideration of all of the *Jumara* factors and the law interpreting them, the Court concludes that Defendants have demonstrated that the balance of convenience is strongly in their favor. To be sure, any one or two factors favoring Defendant would not be enough, in and of themselves, to make a persuasive case for transfer. But here the cumulative effect of the evidence, relating to many different *Jumara* factors, demonstrates the far more significant connections that the Northern District of California has with the case (as compared to this District). And with little to counter-balance those many connections, other than the fact that Plaintiff chose this forum for suit, the Court concludes that transfer is appropriate. *See Fortinet, Inc. v. FireEye, Inc.*, 944 F. Supp. 2d 352, 356 (D. Del. 2013) (granting motion to transfer where every factor other than the Plaintiff's choice of forum either favored transfer or was neutral); *Ivoclar Vivadent AG v. 3M Co.*, Civil Action No. 11-1183-GMS-SRF, 2012 WL 2374657, at *14 (D. Del. June 22, 2012) (granting transfer where every factor other than the Plaintiff's choice of forum squarely or slightly favored transfer or was neutral); *Zazzali v. Swenson*, 852 F. Supp. 2d 438, 454 (D. Del. 2012) ("Overall, the only interest that weighs against transfer is Plaintiff's choice of forum. The following interests weigh in favor of transfer [one slightly]: Defendants' forum preference, convenience of the parties, convenience of the witnesses, local interests in dispute, and judge's familiarity with state law. All of the other

23

factors . . . are neutral or irrelevant.").

The Court therefore GRANTS Defendants' motions to transfer.

Dated: September 1, 2015

_Christopher J. Burke_

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE